## TOWN OF NEWFANE *v.* TOWN OF SOMERSET.*

### *Pauper. Settlement.*

A mortgagor against whom a decree of foreclosure had become absolute, remained in possession of the premises under a parol agreement made with the assignee of the mortgagee after the decree had run, that if he paid the amount of all the mortgages and certain other indebtedness, the premises should be redeeded to him, and the premises were set in the list to him at $3 or upwards for more than five years. *Held* that he did not hold the land in his own right so as thereby to acquire a legal settlement in town.

THIS was an appeal from an order of removal of one Harriet Marble, a pauper, from the town of Newfane to the town of Somerset. The following facts were agreed upon :

In June, 1867, the pauper was married to Thomas A. Marble, a son of Daniel T. Marble, and lived with him until the fall of 1872, when they separated, and she went to Newfane, where she resided until the order of removal in question was made. The said Thomas had no settlement in the state unless he had one by derivation from his father, Daniel T. On May 17, 1845, the said Daniel T., then a resident of New Hampshire, purchased of Irvin & Aspinwall one hundred and twenty-five acres of land in Somerset, for the sum of $100, and on the same day executed to them a mortgage deed of the premises, conditioned for the payment of his note for said sum on three years. In the spring of 1846, he moved with his family and effects from New Hampshire to Somerset, and resided on said land from that time until his death in March, 1868. During that time he had no list in town, except upon his poll and said land. In no year from 1846 to 1856 was the land set in the list at more than $5; in no year from 1856 to 1862 was it set as high as $3 ; but from 1862 to 1867 it was set at $3 or upwards. On January 4, 1855, he executed a mortgage of said land to Jones & Estabrook, to secure the payment of his note of that date for $130, payable on demand with interest, and in September, 1858, Jones &

Estabrook brought a petition to foreclose said mortgage, but afterwards, during the same month, assigned their mortgage and note to Henry Goodnow, and said petition was thereupon discontinued. On January 17, 1855, he executed a mortgage of said land to Hosea Mann, to secure the payment of his note of that date for $37.54, payable in one year with interest, and on April 17, 1858, Mann obtained a decree of foreclosure on his mortgage, with a year's redemption, and the decree became absolute, and on October 19, 1859, Mann quit-claimed said land to Goodnow, who, on the 19th of the previous February, had purchased Irvin & Aspinwall's note and mortgage. Soon after his purchase from Mann, he rented the premises to Daniel T., who, as it was then understood, should pay the taxes thereon. It was understood at the same time that whenever Daniel T. should pay Goodnow what he had paid Mann, Jones & Estabrook, and Irvin & Aspinwall, and also the amount in which he was otherwise indebted to him, Goodnow should execute to him a deed of the premises. On February 20, 1868, a few days before the death of Daniel T., it was ascertained upon examination, that the amount that Goodnow paid for the farm, notes, and mortgages, together with what Daniel T. was otherwise indebted to him, amounted to $780. Goodnow thereupon executed a deed of the premises to Daniel T., and on the same day Daniel T. executed a mortgage to Goodnow, to secure the payment of that sum, no part of which was paid. The property conveyed was then worth about $650.

There were other points embraced in the agreed statement of facts, but they are rendered immaterial by the opinion of the court.

Upon the foregoing facts, the court, at the September term, 1875, Ross, J., presiding, rendered judgment, *pro forma*, that the pauper was duly removed ; to which the defendant excepted.

*O. E. Butterfield*, for the defendant, cited Comp. Sts. c. 17, s. 1 ; No. 25 of the Acts of 1856 ; Gen. Sts. c. 19, s. 1, and c. 40, s. 12 ; 4 Kent Com. 102, 181 ; 1 Washb. Real Prop. 495, 561, 565 ; Redf. Wills, 131; 6 Greenl. Cruise, 497, 498; *Flagg* v. *Mann,* 14 Pick. 467; *Tucker's Exrs.* v. *Keeler,* 4 Vt. 161; *Morey, admr.*

v. *McGuire*, 4 Vt. 327 ; *Henry* v. *Bell*, 5 Vt. 393 ; *Baxter* v. *Willey*, 9 Vt. 276 ; *Manchester* v. *Dorset*, 14 Vt. 224 ; *Pierson* v. *Clayes*, 15 Vt. 93, 104 ; *Blodgett* v. *Hobart*, 18 Vt. 414 ; *Lull* v. *Matthews*, 19 Vt. 322 ; *Langdon* v. *Paul*, 22 Vt. 205 ; *Wires & Peck* v. *Nelson*, 26 Vt. 13 ; *Newfane* v. *Dummerston*, 34 Vt. 184 ; *Hodges* v. *Eddy*, 38 Vt. 327 ; *Hagar* v. *Brainerd*, 44 Vt. 294 ; *Baltimore* v. *Chester*, 47 Vt. 648.

*Davenport & Eddy*, for the plaintiff, cited Acts of 1856. No. 25 ; Gen. Sts. c. 20, s. 1, and c 83, s. 9 ; *Campbell* v. *Worthington*, 6 Vt. 448 ; *Baxter* v. *Willey*, 9 Vt. 276 ; *Wright* v. *Bates*, 13 Vt. 341 ; *Hyndman* v. *Hyndman*, 19 Vt. 9 ; *Catlin* v. *Hull*, 21 Vt. 152 ; *Rich* v. *Doane*, 35 Vt. 125 ; *Wing, exr.* v. *Cooper*, 37 Vt. 169 ; *Graham* v. *Way*, 38 Vt. 19 ; *Cooper* v. *Cole*, 38 Vt. 185 ; *Walker* v. *King*, 44 Vt. 601 ; *Baltimore* v. *Chester*, 47 Vt. 648.

The opinion of the court was delivered by

POWERS, J. This case was heard in the County Court upon an agreed statement of facts, from which it is to be determined whether Daniel T. Marble acquired a legal settlement in the town of Somerset under the fourth clause of s. 1, c. 17, Comp. Sts., as amended in 1856, which provides, among other things, that every person of full age who shall reside in any town in this state, and whose *ratable estate held in his own right* shall be set in the list at the sum of three dollars or upwards for five successive years, shall gain a settlement in such town. Marble had a list of three dollars or more for the requisite period of time, beginning in 1862, but the defendant insists that such list did not represent an estate held by Marble in his own right

It appears that Marble purchased 125 acres of land in Somerset, in 1845, and that he executed a mortgage of the same to secure the purchase money to Irvin & Aspinwall ; that he moved onto the premises in 1846, and resided there till his death in 1868 ; that in 1855 he executed a second mortgage to Jones & Estabrook ; that subsequently he executed a third mortgage to Hosea Mann, and that in 1858, Mann foreclosed his mortgage and

got a decree, which became absolute in 1859, after which, and on the 19th day of October, 1859, Mann quitclaimed his title to Henry Goodnow ; meantime Goodnow had bought in the first and second mortgages, and thus, October 19, 1859, Goodnow owned the whole title to said premises. Soon after Goodnow received his deed from Mann, he rented the premises, with another farm, to Marble, and among other things, Marble agreed to pay the taxes, and there was a verbal understanding between the parties that Goodnow would give Marble a deed on being paid what was his due, and a few days before Marble's death, Goodnow did give him a deed, but he had not then been paid, and Goodnow took a mortgage to secure his indebtedness. During the time Marble occupied the premises under Goodnow, this real estate was set in the list to Marble at three dollars and upwards for more than five years. Did Marble then hold this estate in his own right ?

We think the right spoken of in the statute, refers to the *title* which the party has in the estate—not necessarily a title in form, but one which he could assert. When the Mann decree became absolute, the *title* passed to him, and thereafterwards Marble had no title either in fact or in form.

The element of permanency in the domicile, seems to be a leading characteristic of the various modes prescribed for the acquisition of legal settlements. Residence for seven years without becoming chargeable, holding certain of the more responsible town offices not likely to be conferred upon transient comers, and residing in town and having an estate in his own right that is set in the list for five years at sixty dollars under the old law and three dollars under the present mode of valuation, operate to confer a settlement. This shows that the Legislature intended that settlements should be acquired only by actual settlers who had a substantial estate of their own, or who had become closely identified with the interests of the town by long residence or prominent administration of its affairs. Now during the time this list was in force, this estate was held in Goodnow's *right*. Marble was a mere tenant without any title. He did not sustain the relation of mortgagor to Goodnow, but the relation of the parties was that of landlord and tenant. The former relation of mortgagor and

mortgagee had been extinguished by the foreclosure proceedings. The verbal understanding in relation to the future payment of Goodnow's debt, and his promise to redeem, were a mere proposal to sell upon Marble's compliance with certain precedent conditions. Marble's occupancy was of a temporary character which could be terminated at Goodnow's pleasure.

The case clearly falls within the rule laid down in *Newfane* v. *Dummerston*, 34 Vt. 184. Daniel T. Marble then had no settlement in Somerset, and hence his son, the husband of the pauper, had no derivative settlement there, and therefore the pauper could not be removed to Somerset.

· This ruling makes an examination of the other questions discussed unnecessary.

Judgment reversed, and judgment that the pauper was unduly removed.